IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VANDA PHARMACEUTICALS INC.,<br><br>   Petitioner,<br><br>v.<br><br>ERIC BARD,<br><br>   Respondent. | Case No. 8:25-cv-3422 |

## PETITION TO COMPEL ARBITRATION

Pursuant to 9 U.S.C. § 4, petitioner Vanda Pharmaceuticals Inc. (Vanda) petitions this Court for an order compelling arbitration of a controversy between Vanda and respondent Eric Bard. In support of its petition, Vanda states as follows:

### INTRODUCTION

1. Eric Bard, a former sales representative for Vanda whose employment ended after less than a year, has threatened Vanda with litigation relating to his former employment—a dispute that he agreed to individually arbitrate with Vanda when he signed his employment contract. Ex. 1 (Employment Agreement) ¶ 12; Ex. 3. Because Bard has demonstrated a neglect, failure, or refusal to honor his arbitration commitment, Vanda is entitled to an order under the Federal Arbitration Act directing Bard to individually arbitrate his claims in accordance with the parties' arbitration agreement.

### PARTIES

2. Petitioner Vanda Pharmaceuticals Inc. is a pharmaceutical company focused on the development and commercialization of innovative therapies to address high-priority unmet medical needs and to improve the lives of patients. Vanda is incorporated in Delaware, and its principal

place of business is 2200 Pennsylvania Avenue NW, Suite 300E, Washington, DC 20037.

3. Respondent Eric Bard is a former Vanda employee. He resides in, and is a citizen of, the State of New York.

## JURISDICTION AND VENUE

4. 9 U.S.C. § 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action … of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." The Supreme Court has explained that federal courts, in determining whether they "would have jurisdiction" "save for such agreement" (9 U.S.C. § 4), "may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law" (*Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009)).

5. Bard has threatened to sue Vanda "under the Fair Labor Standards Act (FLSA) and analogous state wage and hour law, including New York." Ex. 2 (Pre-Litigation Letter).

6. Absent Bard's agreement to arbitrate, the Court would have federal question jurisdiction over Bard's FLSA claims (29 U.S.C. §§ 201 *et seq.*) under 28 U.S.C. § 1331, and supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a).

7. Because the Court would have jurisdiction over "the parties' underlying substantive controversy" under 28 U.S.C. §§ 1331, 1367 save for the parties' arbitration agreement, it has subject matter jurisdiction over this petition. *Vaden*, 556 U.S. at 62.

8. The Court has personal jurisdiction over Bard because he signed an employment agreement that requires that all claims arising out of his employment be subject to arbitration that

"will take place in Maryland." Ex. 1 (Employment Agreement) ¶ 12.

9. Venue for this petition is proper in the United States District Court for the District of Maryland because the parties agreed to arbitrate disputes arising out of Bard's employment agreement in the State of Maryland. Ex. 1 (Employment Agreement) ¶ 12; *see* 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.").

## FACTUAL ALLEGATIONS

10. Vanda extended an employment offer to Bard on May 29, 2024. *See* Ex. 1.

11. The offer was for a Neuroscience Account Manager position in New York, a full-time position. *Id.* ¶ 1.

12. The offer detailed the terms and conditions of Bard's employment, including, among other things, his salary, incentive payments, employee benefits, and restrictions on Bard's outside activities. *Id.* ¶¶ 2-9.

13. The offer contained an arbitration provision that requires Bard to "waive any rights to a trial before a judge or jury and agree to arbitrate before a neutral arbitrator any and all claims or disputes arising out of this letter agreement and any and all claims arising from or relating to your employment with the Company …." *Id.* ¶ 12.

14. The arbitration provision specified that "[t]he arbitration will take place in Maryland." *Id.* ¶ 12.

15. The offer letter concluded by stating that Bard "may indicate [his] agreement with these terms and accept this offer by signing and dating" the letter and returning it to Vanda within five days. *Id.* at 3-4.

16. Bard signed the employment agreement and returned it to Vanda on May 30, 2024,

3

by email. Ex. 3 (email communication sending images of signed employment agreement attached as Exhibit 2).

17. Bard began his employment with Vanda soon thereafter.

18. Bard's employment with Vanda ended on or around February 17, 2025.

19. On August 7, 2025, Vanda received a letter from Bard through his counsel, Paolo C. Meireles of Shavitz Law Group, P.A. *See* Ex. 2 (Pre-Litigation Letter).

20. The letter states that Bard "seeks to recover unpaid overtime wages for himself and other similarly situated employees." *Id.* at 1. Specifically, the letter informs Vanda of Bard's "plan to pursue collective claims under the Fair Labor Standards Act ('FLSA') and analogous state wage and hour law, including New York." *Id.*

21. The letter alleges that Vanda had misclassified certain sales representatives like Bard "while in training as 'exempt employees,' not entitled to the overtime protections of the FLSA and state wage and hour law." *Id.* at 2.

22. The claims set out in the letter "arise from or relate to" Bard's employment with Vanda and thus are subject to the parties' arbitration agreement. Ex. 1 ¶ 12.

23. The letter shows that Bard has no intention of abiding by his agreement to arbitrate and instead will pursue his claims in court. It makes no mention of arbitration or the arbitration agreement between Bard and Vanda.

24. Instead, the letter invites Vanda's "pre-litigation response" (*id.* at 1); threatens "costly litigation" (*id.*); describes a "plan to pursue collective claims" (*id.*); and notes a willingness "to postpone our plan to file these claims in order to engage in pre-suit settlement discussions" (*id.* at 2).

25. On October 16, 2025, Bard's counsel represented that he is "still reviewing his

options with respect to litigation. Given the alleged arbitration agreement, which we are yet to review from your side at this time, plaintiff reserves the right to determine how to proceed, and has not otherwise indicated that he intends to file in court or otherwise. Upon review of the arb agreement, we will get back to you with plaintiff's intentions. To be clear, any representation to the court regarding plaintiff's intentions to file in court in light of this newly asserted arbitration agreement, would be incorrect and premature."

26. But nothing about the arbitration agreement is "newly asserted." Bard signed it himself, and he no doubt had awareness of his employment contract when pursuing employment-related claims and threatening Vanda with "costly litigation."

27. If Bard—contrary to the assertions in his earlier letter that he wishes to pursue "costly litigation" on behalf of himself and others allegedly "similarly situated"—changes his intentions and agrees instead to arbitrate on an individual basis, Vanda will stipulate to individual arbitration. Indeed, that is the very relief Vanda seeks in this petition. At present, however, Bard has threatened Vanda with "costly litigation" in plain violation of his employment agreement he personally signed and has failed or neglected to individually arbitrate such claims.

28. "[W]hether an arbitration clause permits class arbitration is a gateway question of arbitrability for the court." *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016).

29. The arbitration agreement precludes Bard's ability to bring collective claims in arbitration. "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019) ("Courts may not infer from an ambiguous agreement that parties have consented

to arbitrate on a classwide basis.").

30. Rather than evince Vanda's consent to class arbitration, the arbitration agreement shows that it is unavailable.

31. The arbitration agreement does not mention classwide arbitration or collective claims at all.

32. Instead, it provides that "[t]he arbitrator's decision will be final and binding on both parties," and repeatedly refers to an agreement between "You and the Company." *See* Ex. 1 ¶ 12 ("You and the Company agree to waive any rights to a trial before a judge or jury and agree to arbitrate …."); *id.* ("Both the Company and you will be responsible for your own attorney's fees ….").

33. Vanda is thus entitled to an order compelling bilateral arbitration over Bard's individual claims.

## CLAIM FOR RELIEF

### Count I
### Order to Compel Arbitration
### 9 U.S.C. § 4

34. Vanda incorporates the foregoing paragraphs as though fully set forth herein.

35. The employment agreement between Vanda and Bard is an enforceable contract involving commerce.

36. The employment agreement contains an enforceable written agreement to arbitrate.

37. The arbitration agreement requires that any claims or disputes arising out of or relating to Bard's employment with Vanda be arbitrated in the State of Maryland.

38. Bard's claims that he was underpaid because he was misclassified as an overtime exempt employee under the Fair Labor Standards Act and/or New York's overtime statute arises

out of or relates to his employment with Vanda.

39. Pursuant to the arbitration agreement, Bard is required to submit such claims to a neutral arbitrator in the State of Maryland.

40. The arbitration agreement does not permit Bard to arbitrate collective actions or claims on behalf of similar situated individuals. *See Lamps Plus, Inc.*, 587 U.S. at 185 ("[C]ourts may not infer consent to participate in class arbitration absent an affirmative 'contractual basis for concluding that the party *agreed* to do so.'" (quoting *Stolt-Nielsen S.A.*, 559 U.S. at 684)).

41. By threatening "costly litigation" and "to pursue collective claims under the Fair Labor Standards Act … and analogous state wage and hour law" (Ex. 2 (Pre-Litigation Letter)) and otherwise neglecting to proceed in arbitration, Bard has demonstrated a failure, neglect, and/or refusal to honor his arbitration commitment.

42. Accordingly, the Court should order Bard to pursue his claims through individual arbitration in the State of Maryland.

## PRAYER FOR RELIEF

WHEREFORE, petitioner Vanda Pharmaceuticals Inc. respectfully requests that the Court issue an Order:

(a.) Compelling Eric Bard to individually arbitrate his claims arising out of or relating to his employment in arbitration in the State of Maryland; and

(c.) Granting such other and further relief as the Court may deem just and proper.

Dated: October 16, 2025                                        Respectfully submitted,

                                                               /s/ *Paul W. Hughes*
                                                               Paul W. Hughes (Bar No. 28967)
                                                               Sarah P. Hogarth (Bar No. 30278)
                                                               MCDERMOTT WILL & SCHULTE LLP
                                                               500 North Capitol Street NW
                                                               Washington, DC 20001

Tel: (202) 756-8000
Fax: (202) 756-8087
phughes@mwe.com

Joseph K. Mulherin (*pro hac vice* to be filed)
MCDERMOTT WILL & SCHULTE LLP
444 West Lake Street
Chicago, IL 60606-0029
Tel: (312) 899-7159
Fax: (312) 984-7700
jmulherin@mwe.com

*Attorneys for Petitioner*
*Vanda Pharmaceuticals Inc.*